[Cite as *State v. Stutler*, 2026-Ohio-3039.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO


| STATE OF OHIO | Case No. 2025-CA-00150 |
|---|---|
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Stark County Court of Common Pleas, Case No. 2011-CR-1169 |
| JEREMY STUTLER | Judgment:   Affirmed |
| Defendant - Appellant | Date of Judgment Entry: August 6, 2026 |


BEFORE:    William B. Hoffman, Robert G. Montgomery, and Kevin W. Popham, Judges

APPEARANCES: Kyle L. Stone, Prosecuting Attorney, Vicki L. Desantis, Assistant Prosecuting Attorney, For Plaintiff-Appellee; Michael A. Partlow For Defendant-Appellant


OPINION

*Popham, J.,*

{¶1}    Defendant-Appellant, Jeremy Stutler ["Stutler"], appeals the October 7, 2025, judgment entry of the Court of Common Pleas of Stark County, Ohio, denying him movement to Level V community privileges. For the reasons below, we affirm.

**Facts and Procedural History**

{¶2}    In 2011, Stutler was charged with murder, tampering with evidence, and gross abuse of a corpse. He was subsequently found not guilty by reason of insanity and committed to Twin Valley Behavioral Healthcare, a maximum-security psychiatric hospital operated by the Ohio Department of Mental Health and Addiction Services.

**{¶3}** In January 2014, Stutler was transferred to Northcoast Behavioral Healthcare ("the Facility"). Over time, he was granted Level III movement privileges, permitting participation in Level III activities, as well as limited Level IV movement privileges for medical treatment. *State v. Stutler*, 2022-Ohio-3838, ¶ 2 (5th Dist.).

### Prior Proceedings Regarding Level IV Privileges

**{¶4}** On September 26, 2019, Dr. Joy Stankowski, the Facility's Chief Clinical Officer, requested that Stutler be granted Level IV community movement privileges with GPS electronic monitoring. Following a hearing, the trial court denied the request. This Court affirmed that decision. *State v. Stutler*, 2022-Ohio-3838, ¶ 3 (5th Dist.).

**{¶5}** Stutler appealed to the Supreme Court of Ohio. In *State v. Stutler*, 2022-Ohio-2792, the Supreme Court concluded that this Court had applied an incorrect standard of review. The Court held that "a trial court lacks discretion to deny a request for a level change when the state has failed to present clear and convincing evidence that the change represents a threat to public safety or any person." *Id.* at ¶ 9. The Supreme Court therefore reversed and remanded the matter for this Court to determine whether the State satisfied its burden under R.C. 2945.401(G). *Id.* at ¶ 16.

**{¶6}** On remand, this Court concluded:

> While we understand the trial court's concern, no one has a crystal ball into the future. We can only look at the evidence presented by the prosecutor during the December 12, 2019 hearing and, in this case, we do not find the prosecutor met its burden of clear and convincing evidence that the change represents a threat to public safety or any person. R.C. 2945.401(G)(2).

Upon review, we find the trial court's decision to deny the level change is not supported by clear and convincing evidence.

*State v. Stutler*, 2022-Ohio-3838, ¶¶ 16-17.

### Current Request for Level V Privileges

{¶7} On May 5, 2025, Beth Tady, LPCC-S, Forensic Services Director, and Dr. Chandler Hicks, Stutler's treating psychiatrist at the Facility, submitted a request seeking Level V movement privileges.

{¶8} Level V privileges would permit Stutler to leave hospital grounds on approved passes and, ultimately, to participate in community outings without accompaniment by Facility staff or community-provider personnel. According to the testimony presented below, Level V movement is generally the final step before a patient may seek conditional release into the community.

{¶9} The State requested an independent psychological evaluation. In response, Dr. Arcangela Wood, Psy.D., Director and Psychologist of the Psycho Diagnostic Clinic ("the Clinic"), conducted an evaluation and issued a report dated July 25, 2025.

{¶10} The trial court conducted an evidentiary hearing on October 2, 2025. Jessica McCullough, APRN, testified on behalf of Dr. Hicks and the Facility. Dr. Wood also testified as an expert witness.

{¶11} Following the hearing, the trial court denied the request for Level V privileges in a judgment entry filed October 7, 2025.

### Assignment of Error

{¶12} Stutler appealed and raises the following assignment of error:

{¶13} "I. THE TRIAL COURT'S FINDING THAT APPELLANT SHOULD BE DENIED THE REQUESTED LEVEL CHANGE BY CLEAR AND CONVINCING EVIDENCE IS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**Governing Law**

{¶14} Stutler argues that the trial court erred in denying the Facility's recommendation that he be granted Level V privileges. Resolution of this appeal requires examination of the statutory framework governing changes in the commitment conditions of individuals found not guilty by reason of insanity.

{¶15} R.C. 2945.401 governs the continued commitment and treatment of persons deemed not guilty by reason of insanity. Under the statute, a trial court retains jurisdiction over the committed individual and must approve any substantial modification to the person's commitment conditions. The procedures governing the court's review depend upon the nature of the modification requested.

{¶16} In *State v. Stutler*, 2022-Ohio-2792, the Supreme Court of Ohio considered a request for increased movement privileges that remained subject to supervision and GPS monitoring. The Court held that a trial court lacks discretion to deny a requested level change when the State fails to establish by clear and convincing evidence that the proposed change presents a threat to public safety or to any person. *Id.* at ¶ 9.

{¶17} Following its decision in *Stutler*, the Supreme Court further clarified the operation of R.C. 2945.401 in *State v. Hickman*, 2024-Ohio-5747. Unlike *Stutler*, the issue in *Hickman* involved a recommendation that the committed individual be transferred from a secure psychiatric facility to a nonsecure group home. The Court distinguished requests

involving nonsecure status from requests involving less restrictive movement within an existing commitment framework.

{¶18} The Supreme Court explained that R.C. 2945.401(E) requires trial courts to consider multiple statutory factors, many of which are unrelated to whether the prosecutor demonstrates a threat to public safety. *Id.* at ¶ 27. The Court further observed that R.C. 2945.401(I) expressly provides that the trial court "may approve, disapprove, or modify the recommendation," thereby preserving judicial discretion when considering requests involving nonsecure status. *Id.*

{¶19} Thus, the nature of the requested modification determines the governing legal standard. Before determining whether the trial court properly denied Stutler's request, we must first determine whether Level V privileges constitute supervised movement governed by *Stutler* or nonsecure status governed by *Hickman*.

**Level V Privileges Constitute Nonsecure Status**

{¶20} The evidence presented at the hearing established that Level V privileges would permit Stutler to leave the secure confines of the Facility and travel into the community.

{¶21} Jessica McCullough, Ph.D. testified as a psychiatric mental health nurse practitioner about a report that was authored by Dr. Chandler Hicks, formerly of the Facility. (Tr. at 10). Dr. Hicks's fellowship had ended before the date set for the evidentiary hearing. (*Id.* at 11) McCullough testified that Level V privileges are implemented in three phases.

{¶22} During **Phase I**, Stutler would be permitted to leave the Facility once per week for therapeutic outings lasting up to four hours. He would wear a GPS monitoring device, and staff would transport him to and from the outing. (Tr. 17-18). Advancement to Phase II would require at least twenty-four successful outings.

{¶23} During **Phase II**, Stutler would continue therapeutic outings while also participating in limited leisure activities such as shopping or dining. He would remain subject to GPS monitoring and would be issued a basic cellular telephone capable only of making and receiving calls. (Tr. 19-22).

{¶24} During **Phase III**, Stutler would continue all previous privileges and would be permitted to visit family members. Although GPS monitoring would remain in place, Stutler would arrange his own transportation through family members or a taxi service rather than relying upon hospital staff. (Tr. 21).

{¶25} Throughout all phases, Stutler would remain subject to drug screening and debriefing following each outing. (Tr. 22-23). The Facility also incorporated recommendations from the Clinic requiring transportation assistance in the event of an emergency or mechanical breakdown and development of a safety plan addressing any unexpected encounter with members of the victim's family. (Tr. 24-25).

{¶26} Despite these conditions, Level V privileges would permit Stutler to leave the secure hospital environment and move about the community without direct staff supervision. GPS monitoring permits observation of a person's location, but it does not constitute actual supervision or physical control over the individual's movements. Likewise, the ability to contact staff by telephone does not transform otherwise unsupervised community access into supervised movement.

{¶27} Accordingly, we find that the requested Level V privileges constitute nonsecure status for purposes of R.C. 2945.401. Because the recommendation involves nonsecure movement into the community, *Hickman*, rather than *Stutler*, supplies the governing standard of review.

**Did the Trial Court Abuse Its Discretion?**

{¶28} Having determined that *Hickman* governs, we review the trial court's decision for an abuse of discretion.

{¶29} Under R.C. 2945.401(E), the trial court must consider numerous factors when evaluating a request for nonsecure status, including:

1. Whether, in the trial court's view, the defendant or person currently represents a substantial risk of physical harm to the defendant or person or others;

2. Psychiatric and medical testimony regarding the person's current mental condition;

3. Whether the person has insight into the offense and accepts responsibility;

4. The grounds upon which the person was found not guilty by reason of insanity;

5. The person's past history of dangerous conduct;

6. The person's current treatment needs; and

7. Any other relevant evidence concerning public safety and the person's continued commitment.

{¶30} At the hearing, McCullough testified that Stutler had made significant progress during his commitment. She noted his compliance with treatment, absence of disciplinary infractions, participation in therapeutic programming, and successful completion of lower movement levels. McCullough opined that Stutler was appropriate for Level V privileges.

{¶31} The State, however, presented the testimony and report of Dr. Arcangela Wood. Although Dr. Wood agreed that Stutler had made meaningful progress in treatment, she expressed concerns regarding his level of insight, the severity of the underlying offense, and the risks associated with expanded community access. Dr. Wood recommended additional safeguards before unrestricted community movement should occur.

{¶32} Here the trial court was troubled by the fact that Stutler apparently gave conflicting stories concerning his upbringing to the two experts. In the Facility's report, Stutler reported his childhood as positive, stating that he had a lot of family support. He reported no history of physical, sexual, or emotional abuse. However, in the Clinic's report Stutler described his childhood as chaotic, with lots of abuse, fighting, drinking, and smoking weed. Stutler previously identified witnessing domestic violence between his parents and other adults, and that there was police involvement.

{¶33} The trial court further found Stutler has an extensive history of violence, including three domestic violences in one year. His brother Shawn Stutler has acknowledged that "Mr. Stutler has always displayed rage and an angry side to him." Shawn previously stated that Stutler would "scream and holler and intimidate people."  In addition, Shawn stated Stutler behaved as if he were 'entitled, arrogant, carried himself as if the world owed him', and 'he has always been a manipulator' and 'conniver.'" Shawn further concluded, "he really didn't care about other's reactions to his behavior." (Wood at 9, 10).

{¶34} Stutler relocated to New Orleans while on supervision and left the State of Ohio without permission, committing a probation violation, believing Louisiana was "out of the range of extradition."  Stutler failed to appear for an arraignment for a Domestic Violence charge. There was a Failure to Appear which was issued, in which he was later picked up on

OVI. In 1999 Stutler was convicted of Aggravated Vehicular Homicide in Columbiana County. (Wood at 6, 7).

{¶35} Both the experts testified that in the years since his commitment, Stutler had shown no violent behavior toward anyone, even when others showed violent behavior toward him. The testimony demonstrated that Stutler was nonviolent when properly medicated.

{¶36} While we acknowledge that the evidence presented at the hearing was generally favorable on the subject of Stutler's status change, it remains the case that he murdered his girlfriend in a despicable, gruesome manner due to his delusional beliefs. We further note that Dr. Wood's assessment of Stutler's risk of future violence has remained "moderate" since 2015. *See State v. Stutler,* 2015-Ohio-5518, ¶ 16. Thus, despite the fact that he has done well in an institutional setting, no real assurance has been offered that Stutler will not again be "set off" if he is allowed off-ground, unsupervised, movement.

{¶37} We find that the trial court expressly considered the evidence presented by both experts. The court also considered the nature of the underlying homicide offense, the circumstances surrounding Stutler's original commitment, and the potential risks associated with permitting unsupervised movement in the community.

{¶38} The record reflects that the trial court carefully weighed the competing expert opinions rather than summarily rejecting the Facility's recommendation. Although the court acknowledged Stutler's progress, it ultimately concluded that the statutory factors weighed against granting Level V privileges at this time.

{¶39} After reviewing the entire record, we cannot conclude that the trial court's decision was unreasonable, arbitrary, or unconscionable. The court considered the factors set

forth in R.C. 2945.401(E), evaluated the testimony of both experts, and articulated concerns supported by evidence in the record.

{¶40} Accordingly, we find that the trial court acted within its discretion when it denied Stutler's request for Level V privileges and nonsecure off-grounds movement.

**Conclusion**

{¶41} Because the requested Level V privileges constitute nonsecure status under R.C. 2945.401, the trial court retained discretion to approve or deny the recommendation after considering the statutory factors identified in R.C. 2945.401(E). Upon review of the record, we conclude that the trial court's decision is supported by competent, credible evidence and does not constitute an abuse of discretion.

{¶42} Stutler's sole assignment of error is overruled.

{¶43}   The judgment of the Court of Common Pleas for Stark County, Ohio is affirmed.

{¶44}   Costs to be paid by appellant Jeremy Stutler.

By: Popham, J.

Hoffman, P.J. and

Montgomery, J., concur